```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____

 United States of America,      ) Criminal Action
                                ) No. 1:21-cr-00004-CKK-1
             Plaintiff,         )
                                ) Status Hearing (via Zoom)
 vs.                            )
                                )
 Lonnie Leroy Coffman,          ) Washington, D.C.
                                ) March 24, 2021
             Defendant.         ) Time:  10:00 a.m.
_____

            Transcript of Status Hearing (via Zoom)
                          Held Before
         The Honorable Colleen Kollar-Kotelly (via Zoom)
                   United States District Judge
_____

                       A P P E A R A N C E S

 For the Plaintiff:       Michael J. Friedman
 (via Zoom)               U.S. ATTORNEY'S OFFICE FOR THE
                          DISTRICT OF COLUMBIA
                          555 Fourth Street, Northwest
                          Washington, D.C. 20530

 For the Defendant:       Manuel J. Retureta
 (via Zoom)               RETURETA & WASSEM, P.L.L.C.
                          300 New Jersey Avenue, Northwest
                          Suite 900
                          Washington, D.C. 20001
_____

 Stenographic Official Court Reporter:
 (via Zoom)               Nancy J. Meyer
                          Registered Diplomate Reporter
                          Certified Realtime Reporter
                          United States Courthouse, Room 6509
                          333 Constitution Avenue, Northwest
                          Washington, D.C. 20001
                          202-354-3118
```

1               P R O C E E D I N G S

2               (REPORTER'S NOTE: This hearing was held during the
    COVID-19 pandemic restrictions and is subject to the
3   limitations of technology associated with the use of
    technology, including but not limited to telephone and video
4   signal interference, static, signal interruptions, and other
    restrictions and limitations associated with remote court
5   reporting via telephone, speakerphone, and/or
    videoconferencing.)
6

7               THE COURT: All right. This is the United States v.

8   Lonnie Leroy Coffman, 21-cr-4.

9               We have the government counsel, Mr. Friedman, and we

10  have new defense counsel, Mr. Retureta, as well as Mr. Coffman

11  present as well from the jail. So we're doing this by video.

12              And, Mr. Retureta, have you had a chance to meet with

13  Mr. Coffman? I know we didn't have a lot of time to get

14  A.J. Kramer to find somebody who was experienced and who would

15  also have the time to spend on the case.

16              MR. RETURETA: Yes, Your Honor, I did have a chance

17  to speak with him yesterday, as a matter of fact. I also have

18  had the chance to speak with family members -- today is

19  Wednesday -- Monday and Tuesday and had a chance to discuss

20  what'll be happening today and what will be the next steps.

21              THE COURT: Okay. Mr. Miles was hoping to get a

22  copy -- a disc, which would have the discovery, as well as the

23  paper indictment. I sent -- we sent an email this morning to

24  ask if he had sent it from his end.

25              But let me ask. Mr. Coffman, have you received that?

1    You can probably just nod.
2             THE DEFENDANT:  (Shakes head.)
3             THE COURT:  You have not.  Okay.  Let me find out
4    from -- I've sent -- as you said, we sent an email.  I'm sure
5    Mr. Miles will respond.  I don't know whether -- what I need to
6    know is did it get to the jail and we need to get after them to
7    get it to Mr. Coffman or he hasn't done it yet.
8             MR. RETURETA:  Your Honor, if -- if I may.  In
9    speaking with Mr. Coffman yesterday, he indicates that he has
10   not received anything.  I can get that forwarded to him so he
11   can review it.  We had a chance to talk and go through it count
12   by count.
13            THE COURT:  Okay.
14            MR. RETURETA:  So that's -- that'll -- that'll happen
15   quickly.
16            THE COURT:  Okay.  What we had set up is the disc of
17   the discovery that Mr. Miles had to date, which presumably he
18   has been providing -- or will provide you with.  I just want to
19   know whether -- if you sent it to the jail, we just need to get
20   after them to make sure it gets to Mr. Coffman.
21            MR. RETURETA:  Very well.
22            THE COURT:  If he hasn't done it yet, then I'll ask
23   you to do it.
24            MR. RETURETA:  Sure.
25            THE COURT:  I just want to know whether, you know, it

1    still hasn't been sent or it's sitting at the jail someplace
2    and has not been provided to him.
3             MR. RETURETA:  I'll confirm that.
4             THE COURT:  All right.  So, Mr. Coffman, you've
5    had -- we've put in new counsel, as you requested.  You've
6    evidently had an opportunity to speak to him.  So are we ready
7    to go forward with your case?
8             THE DEFENDANT:  (Nods head.)
9             THE COURT:  You're nodding yes.  Good.
10        Okay.  All right.  So let's -- the 70 days is June 2nd.
11   The 90 days is June 22nd.  Mr. Coffman had agreed to do today's
12   hearing by video.
13        And I guess the question I had is the discovery -- the
14   bulk of it, I think, had been provided.
15        Mr. Friedman, perhaps you can bring us up to date again.
16   There is no protective order in this case, and my understanding
17   is there isn't a need for one, is that correct, or not?
18            MR. FRIEDMAN:  No.  I -- I indicated at the -- at the
19   last hearing that we may be providing a protective order for
20   the defense attorney's consideration.  I've spoken to
21   Mr. Retureta about that and indicated that we should be able to
22   provide a proposed protective order for his review, likely --
23   likely tomorrow or else a bit later this week.
24        We have also made several discovery productions to
25   Mr. Miles, and I have forwarded those discovery letters to

1   Mr. Retureta.  And I also at least attempted to make him able
2   to download the documents from our file sharing application.  I
3   have not yet been able to speak with him about whether that has
4   been successful, but I'm hoping it was.  And we will work out
5   any details if it turns out it was unsuccessful.
6           THE COURT:  Mr. Retureta, were you able to download
7   it?
8           MR. RETURETA:  Your Honor, we received it -- the
9   invitation for the links to the USAfx system this morning.  So
10  I have not been able to try it yet, but usually those are
11  pretty good to work with, and I don't foresee a problem with
12  that.
13          In addition, the federal public defender has prepared
14  everything that Mr. Miles had received, and that is ready for
15  pickup, as they told me yesterday, this afternoon.  So I will
16  have it coming in to me from the federal public defender, as
17  well as Mr. Friedman at the U.S. Attorney's Office.
18          THE COURT:  Okay.  I cut you off, Mr. Friedman.
19  Anything else?
20          MR. FRIEDMAN:  Yes, Your Honor.  We -- we do have
21  additional discovery that we will be producing in the coming
22  days.
23          THE COURT:  Okay.
24          MR. RETURETA:  And, Your Honor, if -- if I may add,
25  when Mr. Friedman refers to the protective order, as early as

1    this morning -- in fact, no more than about an hour ago -- we
2    received word from the federal public defender that there has
3    been a general agreement reached with the U.S. Attorney's
4    Office on a standard protective order.  I have not seen the
5    wording of that yet.
6          Mr. Friedman and I discussed that this morning before
7    the hearing, but with that in place, it seems like that'll be a
8    more streamlined process also.
9          THE COURT:  That certainly would make it easier.  I
10   know that the federal public defender and the U.S. Attorney's
11   Office have been working on coming up with one that would --
12   could be obviously tailored to a particular case, but we have
13   the basic materials and would be -- would move the whole
14   process so we don't have to negotiate one in every single case.
15   That makes sense.
16         So, Mr. Retureta, I realize that you just came in.  Is
17   there -- from your perspective, obviously you need to review
18   the discovery, and Mr. Coffman needs to review it as well.  It
19   sounds like he has not had an opportunity to do so.
20         I'll leave it to you to talk to him as to what's the
21   best way of doing this within the jail.  They have tablets, but
22   I understand that's for communication and they can't look at
23   the discovery on that.  I thought they could, but evidently
24   they can't.  But they do have laptops that are available.  I
25   think there should be some discussion with Mr. Coffman as to

1  the use of that.  There may be other ways of doing it.  I'll
2  leave it to you.
3          Michelle Wilson in the Department of Corrections,
4  General Counsel's Office, is sort of the point person
5  for getting discovery and any issues with it.  So I -- she's
6  been very responsive in terms of getting it, to make sure that
7  Mr. Coffman gets -- has gone over it and gets the written copy
8  of the indictment and then begins to take a look at the
9  discovery.  He can't make decisions and you won't be able to
10 have a really informed discussion about what needs to -- in
11 terms of any motions relating to the evidence or otherwise.
12         MR. RETURETA:  Right.
13         THE COURT:  So, Mr. Retureta, do you have -- after
14 talking to Mr. Coffman, do you have an idea of what -- besides
15 looking at the discovery, what else needs to be done in terms
16 of setting schedules?
17         MR. RETURETA:  In our discussion yesterday, we talked
18 about perhaps a 30-day period for me to jump into the case,
19 begin to look at the evidence, as the Court indicates, share
20 the evidence and review it together with Mr. Coffman.  And I
21 think that might be an appropriate time period for me to get
22 in, review, and begin to make decisions on how the case will
23 move forward.
24         I haven't discussed the time period.  We discussed it
25 generally with Mr. Friedman, but I would suggest to the Court

1   perhaps a 30-day time period and set another status hearing at
2   that point to then inform the Court as to where we will be
3   going.
4              THE COURT:  Okay.  And it's been my practice in all
5   of the cases -- I don't know what the government is doing
6   relating to plea offers.  I don't pay attention to the news.
7   So I don't know -- I don't know where you are with it.  I'll
8   leave that aside in terms of doing things.
9              And if it's going to be a trial, we'd want to set a
10  trial template anyway, even if you have -- while listening to
11  what they have to offer.  I'll wait on that because I think you
12  need to look at the discovery to figure it out, but it sets out
13  all the different motions that you would need to get to a trial
14  date.
15             MR. RETURETA:  Right.
16             THE COURT:  And at this point, we would -- you know,
17  there's -- there's time -- we're well within the speedy trial
18  date, and we've started to set June trials.  So we're starting
19  them in -- in April.
20          So let me look at a date.
21          Mr. Coffman, have they vaccinated you yet?  Did you get
22  the vaccine?
23             THE DEFENDANT:  (Shakes head.)
24             THE COURT:  No.  Are you willing to get it?  I guess
25  I should ask that question.  If they offer it, will you get it?

1    You need to unmute.
2            THE DEFENDANT:  Your Honor, I haven't made up my mind
3    for sure.  I was going to take it, and then I changed my mind.
4    I'm kind of -- I'm unsure at this time.
5            THE COURT:  Okay.  The -- I'll -- I won't get into
6    that.  If you want to talk to somebody about it, I'm sure at
7    the jail, they -- you know, one of the doctors or somebody, you
8    might get something.  They are vaccinating people.  I don't
9    know whether they're using Pfizer or Moderna.  I know they've
10   done two shots.
11           If you're going to come to in-person hearings, obviously
12   it's a better protection, but I'm not going to tell you what to
13   do.
14           THE DEFENDANT:  Your Honor, I -- I originally told
15   them I wanted to get the shot, but the one you only have to
16   have one shot.  I think that's the second one that was
17   approved, the second vaccine that was approved, and they said
18   it wasn't available right now.  So I don't know.  I don't know
19   where we're at on that.
20           THE COURT:  Okay.  I'm not sure what they're doing.
21   I don't know whether they're waiting and using -- initially --
22   I mean, I don't know whether it was Moderna or Pfizer, frankly,
23   but I know some of the defendants have gotten two shots, which
24   has been one of those.  If it's the Johnson, then -- and I
25   don't think -- I'm not sure that that's arrived yet -- then

1   that's only one shot.
2           But, anyway, I just wanted to -- to ask in terms of
3   whether -- trying to keep that in mind.  Obviously in-person
4   hearings, you may be in a better position.
5           So what -- do you want to propose a date, Mr. Retureta,
6   what you're looking at in presumably April?
7                MR. RETURETA:  Would Your Honor consider the 23rd of
8   April?  That's a Friday.  Or Thursday or Wednesday of that
9   week?
10               THE COURT:  The -- the 21st I -- I'm open all day.
11  22nd and 23rd I have a 10 o'clock, but I could do it -- I leave
12  an hour and a half because sometimes we have problems getting
13  people on.  So the 22nd and 23rd I could do it at 11:30, or the
14  21st I can do it at 10:00.
15          Mr. Friedman, do you have a preference?
16               MR. FRIEDMAN:  Those are all convenient on my end.
17               THE COURT:  Mr. Retureta, why don't you choose what
18  you think is best.
19               MR. RETURETA:  Your Honor, why don't we try the --
20  the early one, the 21st.
21               THE COURT:  All right.  And we'll do April 21st.  We
22  can do that at 10:00.
23          Mr. Coffman, are you willing at this point, since it's
24  still just going to be a status, scheduling -- and hopefully
25  we'll have gotten the -- the discovery -- to do it by video?

1       THE DEFENDANT:  Yes, Your Honor.

2       THE COURT:  Okay.  Then we'll do it by video.  We'll
3  Zoom.  Zoom seems to work best at this point.

4       Dorothy, anything else I need to cover?

5       THE COURTROOM DEPUTY:  Just the speedy trial.

6       THE COURT:  Oh, yeah.  I forgot to do that.

7       So, Mr. Coffman, do you remember our discussions about
8  your speedy trial rights?  At this point, the 70 days is
9  June 2nd.  The 90 days is June 22nd.  Would you agree to
10 waiving or continuing your speedy trial days from today's date,
11 which is March 24th, until we come back April 21st to allow you
12 and your counsel to review the discovery?

13      THE DEFENDANT:  Can I ask -- ask my attorney to make
14 that decision?

15      THE COURT:  If you want to do that, it's up to you.

16      THE DEFENDANT:  I would -- I would trust his -- his
17 decision, because I'm not sure.

18      THE COURT:  Well, you're obviously not quite -- not
19 ready for trial since you need to get the discovery.  He needs
20 to look at it too so you know what the government's evidence is
21 and they can figure out -- you know, make an informed decision
22 about what you want to do.

23      Mr. Retureta.

24      MR. RETURETA:  Your Honor, we had a chance to talk
25 about speedy trial yesterday, and I think given the -- my

1    brand-new entrance and review of discovery and, more
2    importantly, sharing and reviewing the discovery with
3    Mr. Coffman, I -- I would advise him that that would be the
4    right choice at this time.  And then on the 21st we can make a
5    further decision on speedy trial.
6                THE COURT:  Okay.  All right.  Is that acceptable to
7    you, Mr. Coffman?
8                THE DEFENDANT:  Yes, Your Honor.
9                THE COURT:  Okay.  All right.  Then I'll find it's in
10   the interest of justice, the community, and the defendant to
11   continue Mr. Coffman's speedy trial rights from March 24th to
12   April 21st to allow new counsel to review the discovery and to
13   share it with Mr. Coffman so that he has an opportunity to --
14   to review it.
15          Okay.  Mr. Retureta, I know you've got other cases so
16   you know how to work the system, but if you have some problems,
17   get back to me about getting the discovery to Mr. Coffman.
18   That is sort of an --
19               MR. RETURETA:  No problem.  Will do.
20               THE COURT:  -- on-and-off problem, but at this point
21   it seems to be working smoothly, but occasionally we have
22   hiccups in it.
23               MR. RETURETA:  Indeed.
24               THE COURT:  So I want to make certain he gets to look
25   at it during this period of time.

1         MR. RETURETA:  Definitely, Your Honor.
2     And, Your Honor, when you're ready, I just have a couple
3 points I'd like to raise.
4         THE COURT:  Okay.  Why don't you go ahead.
5         MR. RETURETA:  I'm sure -- the first point is I'm
6 sure you may have heard the publicity, or at least the court
7 action within the court regarding an interview that the
8 previous acting U.S. Attorney for the District of Columbia gave
9 to a TV news magazine.  We're monitoring that.  I don't think
10 there's -- there's a connection to Mr. Coffman's case.  All of
11 his charges in his indictment are individual acts.  There has
12 been no allegation of a -- a link with anyone else.
13     But given that -- that interview and given what we've
14 learned to be an internal investigation with the
15 U.S. Attorney's Office, we just highlight that for the Court.
16     I had an opportunity to speak with Mr. Friedman about
17 that this morning.  There seems to be no indication that that
18 involves Mr. Coffman's case, but in my effort to make sure that
19 he receives a fair trial and process, I just raise it to the
20 Court at this time just in the sense that we want to make sure
21 that there is no impact on -- on his case.
22         THE COURT:  Okay.
23         MR. RETURETA:  And I have one more case -- one more
24 point also.
25         THE COURT:  Go ahead.

1           MR. RETURETA:  The -- the other point is just simply
2    a -- a convenient housekeeping matter.
3           When we have these hearings, it's -- it's always
4    convenient.  Since we have the video link and Mr. Coffman is
5    there available, if there's a way that we can keep that video
6    link open and available and, therefore, I have a chance to at
7    least have a 10-, 15-minute time period with him after we
8    finish to just kind of review what happened and talk with him a
9    little bit face to face as opposed to through the phone.  So if
10   that's a possibility, I would appreciate it.
11          THE COURT:  Dorothy, can we -- Dorothy is going to
12   have to stay on as the host.  I mean, she's not going to
13   listen, but she would have to stay on, is the only way you can
14   do these Zoom things.  You need to have a host.
15          MR. RETURETA:  Well, if she --
16          THE COURT:  She can do it timing-wise.
17          MR. RETURETA:  Yeah.  Yeah.  If -- if she can make me
18   the host, then I can conduct it and I can shut it down also, if
19   that's a possibility.
20          THE COURTROOM DEPUTY:  I don't think so.  I'll leave
21   the room because no one else is -- there's no one else
22   listening in, and I'm not --
23          MR. RETURETA:  All right.
24          THE COURT:  Yeah.  It's a government link.  I think
25   what we can do is if -- do you control whether -- who comes

1   next, or is it available so we can let them talk?
2           THE COURTROOM DEPUTY:  Yes.  I'll close all the phone
3   lines.  I can close all the phone lines.
4           THE COURT:  Especially the public one, because we
5   have a public line as well.
6           MR. RETURETA:  Right.
7           THE COURTROOM DEPUTY:  I'll just close all the phone
8   lines.
9           THE COURT:  Somebody needs to mute.  Mr. Coffman, you
10  need to mute.
11      Okay.  I'm sorry.  I missed it.
12          THE COURTROOM DEPUTY:  Okay.  I'll close all the
13  phone lines and just leave the video up.
14          THE COURT:  Okay.  The rest of us will just get off.
15          THE COURTROOM DEPUTY:  Right.
16          THE COURT:  We can get off.  That's not a problem.
17          MR. RETURETA:  I appreciate that, Your Honor.
18      Thank you, Ms. Patterson.
19          THE COURT:  This is zoom.gov, not just a regular
20  Zoom.
21          MR. RETURETA:  Right.
22          THE COURT:  We're not going to switch it, but Dorothy
23  could care less about -- she's got enough on her plate.  She's
24  the deputy courtroom clerk.  So she's not -- she needs to be
25  the host, but you-all can be talking.  It's not going to be a

1   problem.  I don't have a problem with that.
2           Is there something else?
3           MR. RETURETA:  Thank you, Your Honor.  Thank you.
4           THE COURT:  I guess the only question is -- I don't
5   have another matter.  So today -- today I don't.  So today is
6   not a problem.  Some other days I have other Zooms and we need
7   to get off.
8           MR. RETURETA:  Certainly.
9           THE COURT:  But today is no problem so you should be
10  able to talk to him.
11          MR. RETURETA:  I appreciate that.
12          THE COURT:  Anything else?
13          MR. RETURETA:  No, that's it.  Just those two points.
14          THE COURT:  Okay.  Mr. Friedman, anything from you?
15          MR. FRIEDMAN:  No, Your Honor.
16          THE COURT:  Okay.  If there's nothing else, then let
17  me excuse everybody.  We'll be back on the 21st, unless you
18  contact me prior to that time.
19          And for the rest of us, you know, the little button
20  that -- the red thing at the bottom, leave.  If you do it that
21  way, you don't screw up the Zoom when you want to do it the
22  next time around in terms of getting on.  So we'll all leave.
23          Mr. Coffman, take care of yourself, everybody as well.
24  Be well.  And we'll resume in April.
25          MR. RETURETA:  Thank you very much, Your Honor.

```
1                    THE COURT:  Take care.
2                    MR. RETURETA:  Take care.
3                    THE COURT:  Parties are excused.
4               (The proceedings concluded at 10:23 a.m.)
```

```
 1            CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3        I, Nancy J. Meyer, Registered Diplomate Reporter,

 4   Certified Realtime Reporter, do hereby certify that the above

 5   and foregoing constitutes a true and accurate transcript of my

 6   stenograph notes and is a full, true, and complete transcript

 7   of the proceedings to the best of my ability.

 8

 9                    Dated this 24th day of March, 2021.

10

11                    /s/ Nancy J. Meyer
                      Nancy J. Meyer
12                    Official Court Reporter
                      Registered Diplomate Reporter
13                    Certified Realtime Reporter
                      333 Constitution Avenue Northwest, Room 6509
14                    Washington, D.C. 20001
```