UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|
|
UNITED STATES OF AMERICA        |
                        |        Case Nos.:    21-cr-004  (CKK)
           v.           |                        21-cr-614  (CKK)
                        |
LONNIE LEROY COFFMAN,        |
            Defendant.     |
|
|

DEFENDANT'S MEMORANDUM IN AID OF SENETENCING

COMES NOW DEFENDANT, Lonnie Leroy Coffman, by and through undersigned counsel and respectfully submits this Memorandum in Aid of Sentencing.

*Concise Sentencing Argument*

Mr. Coffman is a 72-year-old U.S. Army veteran. Except for time spent serving his country in Vietnam, he has lived his whole life in Alabama. He is the father of two grown children and has spent over 50-years together with his wife.[1]

Days prior to January 6, 2021, Mr. Coffman drove to Washington, D.C. from his home in Alabama. He traveled in search of information related to the 2020 general election, and to attend a rally on January 6, 2021. After attending the rally, he became disenchanted with what he saw and decided to drive back home to

---

[1] While Mr. Coffman divorced his wife in 2019, he maintains a good relationship with her. PSR, p.15¶78. Throughout Mr. Coffman's time incarcerated, his ex-wife has been a point of contact for undersigned counsel on behalf of Mr. Coffman.

Alabama.  Upon returning to his vehicle, parked near the U.S. Capitol, he discovered that the vehicle was within a security perimeter and that it was being searched.  Mr. Coffman freely admitted to law enforcement that he owned the vehicle and its contents.  It was the contents of the vehicle that resulted in criminal charges, and that led to Mr. Coffman's acceptance of responsibility and guilty plea.

Mr. Coffman stands before this Court for possession of illegal items pursuant to U.S. Code and D.C. Code violations.  As for his travel and activities in Washington, D.C. in early 2021, all parties agree that he did not communicate with other individuals or groups, nor did he coordinate his activity with anyone.  Mr. Coffman accepted responsibility for the illegal items in his possession in Washington, D.C. and, also at his home in Alabama.  He never shirked his responsibility for the items in his possession.  Additionally, Mr. Coffman has done nothing to impede or obstruct justice during the course of the investigation, prosecution or sentencing in his case. PSR, p.11¶46.  Mr. Coffman's remorse and acceptance of responsibility warrant sentence mitigation.

Given the extraordinary and compelling circumstances of Mr. Coffman's personal history, his service to this nation, and his health and age, we respectfully submit further incarceration is not warranted.  To achieve a fair and just sentence, a sentence with supervision, and a combination of physical and mental health evaluation and treatment is requested.

*Background*

Mr. Coffman was born in the family home in Morgan County, Alabama, on January 17, 1950. Because he was born at home, he had no birth certificate produced. His mother and father were sharecroppers who were married for 70-years and raised a family of nine children including Mr. Coffman.

In 1968, at the age of 17, he enlisted in the United States Army. Mr. Coffman lied about his age to enlist and serve his country. Presentence Report, p.19¶91. As a member of our armed forces, Mr. Coffman served multiple tours of duty, with time in Vietnam, until he was honorably discharged in 1976. *Id.*

After serving his country, Mr. Coffman returned home to Alabama, married his wife of 50-years and together they raised two children. Mr. Coffman provided for his family by working for the "Nicholson File Company" in Cullman, Alabama. Mr. Coffman spent 29-years working at Nicholson until 2012. PSR, p.18¶92.

After the 2020 election, Mr. Coffman traveled to Washington, D.C. He traveled with his personal belongings and firearms for, as he stated to law enforcement, his protection. He traveled to Washington, D.C. because of alleged election fraud that concerned him. Once in D.C., he wanted to investigate the allegations of fraud he had heard from media outlets. He also wanted to attend a rally scheduled for January 6, 2021.

Once he realized that he could not meet with anyone regarding his concerns, and that the rally was not what he expected, he decided it was time to go home to Alabama. Upon returning to his vehicle on the evening of January 6, 2021, he was

3

arrested and initially charged by a criminal complaint that alleged Possession of Unregistered Firearm (destructive device)(26 U.S.C. § 5861(d)) and Carrying A Pistol Without A License (D.C. Code § 22-4504(a)).

To the date of the scheduled sentencing, Mr. Coffman will have been detained just days shy of 15-months.  If the Court were to consider factoring good time credit as calculated by the Bureau of Prisons, on the date of sentencing Mr. Coffman will have served the equivalent of a 20-month prison sentence.

*Presentence Report*

Mr. Coffman objects to the application of U.S.S.G. § 3D1.2(d) to group closely related counts.  Application of this provision was not contemplated by the parties when negotiating the plea agreement.

Mr. Coffman also notes that in conversations with the government and U.S. Probation, all parties agree that Mr. Coffman, on January 6, 2021, in no way "breached" the U.S. Capitol or its security perimeter.

*Mr. Coffman's Letter to The Court*

Mr. Coffman presents his letter to the Court as an attached exhibit to this Memorandum.  The letter shows Mr. Coffman's heartfelt remorse for his conduct.  As he notes in the letter, he accepts full responsibility for his actions.   Exhibit, Mr. Coffman Letter to Court, p.1.

The letter also describes why he came to Washington, D.C. in early January of 2021.  As Mr. Coffman writes, he wanted to know:  "Did my vote go to the people I

4

intended it to?"  Exhibit, Mr. Coffman Letter to Court, p.1.  This is consistent with how Mr. Coffman described his actions and intent in the days prior to January 6th, and on January 6, 2021.  The letter also confirms that he did not communicate or coordinate his actions with anyone else.

Mr. Coffman also writes in his letter about the "trials" he has gone through, and the "test of spirit" he has experienced since January 6, 2021.  He also references the "mental anguish" he has endured while incarcerated.  Exhibit, Mr. Coffman Letter to Court, p.1.  The letter also provides the Court a view into how Mr. Coffman survived, thought, and accepted his actions and their consequences.  The letter provides the Court with confidence that Mr. Coffman is not a danger to the public; has fully accepted responsibility his actions, and he warrants mitigation of sentence.

### *§ 3553(a) Statutory Sentencing Factors*

The advisory sentencing guidelines are merely one factor to consider when imposing sentence, and the Court "may not presume that the Guidelines range is reasonable."  *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *see also, United States v. Booker*, 543 U.S. 220 (2005).  The Court must also consider all factors identified in 18 U.S.C. § 3553(a).

The Parsimony Clause of 18 U.S.C. § 3553(a) provides that "[t]he court shall in every case impose a sentence *sufficient, but not greater than necessary*" to achieve the purposes and goals of sentencing (emphasis supplied).  As the Court reaffirmed in *Pepper v. United States,* 562 U.S. 476, 491 (2011), in light of the long-accepted

principle that "the punishment should fit the offender and not merely the crime," the "sentencing judge [is] to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." 562 U.S. at 491 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

Such authority and guidance cannot be emphasized enough in Mr. Coffman's case. As a threshold consideration for the Court, Mr. Coffman respectfully asks that further incarceration not be included as part of a judgment and commitment order. With this consideration in mind, Mr. Coffman submits the following authority and argument for the Court.

*Nature and Circumstances of the Offense*

Mr. Coffman accepts full responsibility for the material and items he possessed in the District of Columbia on January 6, 2021. § 3553(a)(1). While he was in possession of the illegal items, it is appropriate to note that at no time did Mr. Coffman brandish, share, or communicate to others what he had on his person or in his vehicle. There is no evidence he was associated with or a coordinator among individuals or factions assaulting the Capitol on January 6th. There is no evidence that he entered the Capitol, no evidence of vandalism attributable to him, and no damage to property or person attributable to him. Mr. Coffman stands clear of those who breached police lines at the Capitol, invaded the building, and destroyed property inside the Capitol. Furthermore, Mr. Coffman is not alleged to have assaulted police officers.

*Seriousness of Crime & Respect for the Law*

Mr. Coffman submits that his conduct was serious, and it is because of this that he promptly acted to accept responsibility and agreed to a plea agreement with the government.   § 3553(a)(2)(A).   As part of his plea agreement, Mr. Coffman accepted statements of facts for both cases captioned at the beginning of this pleading.

*Afford Adequate Deterrence & Protect Public*

Mr. Coffman's time spent incarcerated should already serve as adequate deterrence to anyone considering similar conduct.  Moreover, his felony conviction will stay with him for the rest of his life, and he is painfully aware that the conviction will deprive him of his right to possess firearms.  This should be considered by the Court when considering whether the sentence imposed protects the public.   § 3553(a)(2)(B and C).

*Need for Medical Care*

The Court must consider a sentence that would address the numerous health issues facing Mr. Coffman.  While the Bureau of Prisons does operate medical centers, there can be no dispute that Mr. Coffman's many medical conditions would be better served at a medical center operated by the Veteran's Administration. § 3553(a)(2)(D).

*Avoid Sentencing Disparity*

By its plain language, § 3553(a)(6) mandates that district courts consider sentences imposed upon similarly situated defendants.  At its very core, the goal of § 3553(a)(6) is to ensure that every criminal defendant is treated fairly and justly.  By requiring district courts to consider sentences imposed upon similarly situated

defendants, § 3553(a)(6) ensures that the power to determine appropriate sentences for criminal defendants is not left to a prosecutor, or recommended sentence guidelines, but rather remains squarely within the province of district court judges.

The following cases, from this District, are submitted for the Court's consideration:

- *United States v. Meredith*, 21-cr-00159 (ABJ) - Convicted of 18 U.S.C. § 875(c) (Communicating a Threat) – Sentenced to 28-months (Government recommended midrange of guidelines at 37-46 months). The following facts are taken from the government sentence memorandum (ECF 54, pp.1-2): The defendant drove from Colorado to Washington, D.C. and arrived on January 6, 2022. While in route and upon arriving to Washington, D.C., the defendant texted violent threats, and threatened to shoot Speaker of the House Nancy Pelosi. The defendant was arrested before he could carry out his threats. When arrested, he possessed an assault-style rifle with a telescopic sight, a 9 mm semi-automatic firearm, over 2,500 rounds of ammunition, and multiple high-capacity magazines. (referencing "Statement of Offense" at ECF 47). While he pleaded guilty only to Communicating a Threat, in addition he was also originally charged with D.C. Code § 7-2502.01(a) (Possession of Unregistered Firearm); D.C. Code § 7-2506.01(a)(3) (Possession of Unregistered Ammunition); and D.C. Code § 7- 2506.01(b) (Possession of Large Capacity Ammunition Feeding Devices). *See* ECF, 28 (Superseding Indictment).

- *United States v. Troy Smocks,* 21-cr-00198 (TSC) - Convicted of 18 U.S.C. § 875(c) (Communicating a Threat) – Sentenced to 14-months (Government recommended midrange of guidelines either 8-months or 10-months depending on criminal history). The following facts are taken from the government sentencing memorandum (ECF 59 pp.1-2). The defendant traveled to

Washington D.C. on January 5, 2021, and, on the morning of January 6, posted a message on social media "containing a threat to injure law enforcement officers" that reached "tens of thousands of users" from an account that falsely purported to identify the defendant as a retired military officer. The message threatened that "millions" would "return on January 19, 2021, carrying our weapons."  After January 6, the defendant sent "another threatening message on the social media service" that was "again viewed by tens of thousands of other users," threatening to "hunt down" and murder "RINOS, Dems, and Tech Execs" "over the next 24 hours." *Id.* at 3.  According to the government, "defendant has a lengthy criminal history, with approximately 18 prior criminal convictions spanning from the early 1980s to 2006." *Id.* at 6.

- *United States v. Dawn Bancroft*, 21-cr-00271 (EGS) – The defendant pleaded guilty to unlawfully Parading, Demonstrating, or Picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G), a misdemeanor that carries a maximum sentence of six months in prison.  She is currently out on bond and pending sentencing.  The defendant entered the U.S. Capitol on January 6, 2021, upon exiting, filmed a video in which she stated, "We broke into the Capitol...we got inside, we did our part' and 'We were looking for Nancy to shoot her in the friggin' brain but we didn't find her.'

The three cases, out of the many cases arising from events surrounding January 6, 2021, contrast with Mr. Coffman's conduct on that day.  Mr. Coffman did not threaten anyone.  Rather, Mr. Coffman sought to speak with officials about his concerns.  Mr. Coffman did not identify or threaten a specific individual, nor group, upon which to commit a violent act.  Rather, Mr. Coffman possessed the illegal items, and freely admitted to law enforcement when asked that the material was indeed his.

Of the cases noted above, the *Meredith* case stands out most for comparison. The *Meredith* defendant also possessed firearms, as did Mr. Coffman. However, the *Meredith* defendant not only possessed firearms but announced an intent to execute the Speaker of the House with the firearms. In stark contrast, Mr. Coffman never expressed to anyone an intent to use his firearms against anyone. Mr. Coffman submits there is a disparity between the illegal acts and intent in his case and that of the *Meredith* case. We suggest that Mr. Coffman's sentence should not exceed that of the defendant in *Meredith*.

While analysis of conduct, charges, and sentencing are the norm when evaluating sentence disparity under § 3553(a)(6), courts are not restrained as to the source or kind of information they may consider in sentencing a defendant so long as that information bears upon determining the proper sentence. *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir. 1989); *see also* 18 U.S.C. § 3661; U.S.S.G. § 1B1.4. Judges may account for "sentence disparities when devising a punishment for a particular offender." *Id.* See also *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) ("Section 3553(a)(6) directs district courts to consider the need to avoid unwarranted disparities—along with other § 3553(a) factors—when imposing sentences).

One such disparity is the transitional nature of some detention facilities; specifically, facilities that housed Mr. Coffman in Washington, D.C. The nature of this disparity was identified by the Honorable Reggie B. Walton who noted the harsh

nature of transitional facilities in Washington, D.C., and the region, and reduced a defendant's sentence by 36-months.  At a sentencing hearing, Judge Walton stated:

> And I do appreciate that the quality of life for someone who is serving a sentence in a local jail is a lot harsher and a lot more difficult than the time that one spends if they are actually serving a sentence at a federal institution. And I think that it is entitled to some consideration because of the hardship that individuals endure when they are detained in a local detention facility.
>
> But as I say you have spent a significant amount of time in a local facility, and in my view that's entitled to some consideration and therefore, I will reduce further the amount of time that you have to serve by 36 months which reduces your sentence to 198 months which I think is an appropriate sentence in this case.

*United States v. Tovar Pupo*, 04-cr-114 (RBW), Nov. 6, 2015, Sentencing Hearing, p.92:2-9 and p.93:10-15 (ECF 536).  The nature of a jail facility and rehabilitation of a defendant is a relevant factor in assessing the danger a defendant poses to the community and "highly relevant to several of the § 3553(a) factors." *See Pepper v. United States,* 562 U.S. 476, 491 (2011).

Since January 6, 2021, Mr. Coffman was detained at three facilities that are considered "transitional:"  the D.C. Department of Corrections Central Detention Facility ("D.C. Jail") and Central Treatment Facility ("CTF"), and USP Lewisburg. The Court is well aware of the difficulties at both D.C. Department of Correction facilities during the 2021 calendar year.  These difficulties reached such a level that scores of D.C. federal detainees, including Mr. Coffman, were suddenly transported by the U.S. Marshal Service to the BOP facility in Lewisburg, Pennsylvania, USP

Lewisburg.  Mr. Coffman submits his time at these facilities, during a time of upheaval, warrants sentence mitigation.

*Medical – Mental Health*

Undersigned counsel relies upon the medical records made available to the Court in a motion to reconsider bond (ECF 12) and information provided to the Court by U.S. Probation.  Together, it is submitted that Mr. Coffman's medical issues require extensive attention and that such attention and care would be better served at a Veteran's Administration medical center rather than a Bureau of Prisons' facility.

*Conclusion*

Given Mr. Coffman's extraordinary and compelling circumstances as they relate to his health, advanced age, and acceptance of responsibility, we respectfully submit that no further time incarcerated is warranted to achieve a fair and just sentence.  Rather, we submit that Mr. Coffman's sentence warrants sentence mitigation and consideration of a "time-served" sentence of incarceration, and components of health care and mental health treatment.

*Waive Imposition of Monetary Fine*

Given the poor economic status of Mr. Coffman, he respectfully asks that the Court waive imposition of a fine.  PSR, p.18 ¶98.

*BOP Facility Recommendation*

Mr. Coffman finally requests that should the Court impose a term of incarceration more than what he has already served since January 6, 2021, that the Court recommend to the Bureau of Prisons an appropriate facility in an appropriate region of our country.  More specifically, we ask the Court to include in its Judgment & Commitment Order a specific recommendation for a facility in the Southeast Region of the nation; preferably, a facility with medical treatment capabilities.

One such facilities is the Federal Correctional Complex in Butner, North Carolina.  The Butner Complex offers a federal medical center and multiple detention facilities including a low-security facility, FCI Butner Low.

Filed this 2nd day of March 2022.

Respectfully submitted,

RETURETA & WASSEM,  P.L.L.C.

By:_____
Manuel J. Retureta, Esq.
District of Columbia Bar #430006
300 New Jersey Avenue, NW, Suite 900
Washington, D.C.  20001
202-450-6119
MJR @ RETURETAWASSEM.COM

13

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing filing was served upon counsel for all parties via electronic mail on this 2nd day of March 2022.

By: _____
        Manuel J. Retureta, Esq.